# STATE OF VERMONT

# ENVIRONMENTAL COURT

Appeal of Michael and Mary }
Leikert }
} Docket No. 132-8-03 Vtec
}
}

## Decision and Order

Appellant-Applicants Michael and Mary Leikert appeal from a decision of the Development Review Board (DRB) of the Town of Morristown, denying their application for conditional use approval to operate an automobile and small engine repair business at their residence. This appeal is taken as an on-the-record appeal as the Town has adopted and implemented the procedures necessary for such appeals. Appellant-Applicants (Appellants) are represented by Paul S. Gillies, Esq.; the Town of Morristown is represented by Joseph S. McLean, Esq.; Interested Persons Ida Mae Anderson, Bernard and Virginia Barton, David and Julie Boudreau, Kimberly Fortune, Samuel Guy, Richard and Josee Tomlinson[1], and Bruce and Katherine Wilder are represented by Jeff W. Lively, Esq.

The Zoning Administrator forwarded the documentary record to the Town's attorney, who forwarded it to the Court. Although the Zoning Administrator's cover letter states that the audiotape recording of the public hearing held on July 17, 2003 was included, it was not in fact provided to the Court. No party has objected to the lack of the audio tape. Rather, the Town prepared a transcript of the DRB hearing and provided a copy to the Court. The DRB also took a site visit, but as it did not place its observations and statements made during the site visit on any audio or video record, the DRB's site visit cannot be considered in the record of this appeal. The parties were given the opportunity to submit written memoranda of law.

In an on-the-record appeal, the factual findings of the administrative body are given great weight, although they are not conclusive. The court must determine if substantial evidence exists in the record as a whole from which the factual findings of the DRB might reasonably be inferred. See In re Petition of Town of Sherburne, 154 Vt. 596, 604-05 (1990); Appeal of Lussier and Noe, Docket No. 116-5-02 Vtec (Vt. Envtl. Ct., Sept. 16, 2002). If there was conflicting evidence, the DRB is the body charged with weighing this evidence and the court will not disturb its factual findings if supported by substantial evidence in the record as a whole. See Appeal of Doyle, Docket No. 100-5-02 Vtec (Vt. Envtl. Ct., Jan. 21, 2003). Upon consideration of the record and the parties' memoranda, the court determines that the following facts are supported by substantial evidence in the record as a whole, and concludes as follows.

Appellants own a .75-acre parcel of property located at 82 Howard Street in the High Density Residential zoning district in the Town of Morristown (and the Village of Morrisville). The property is located on the northwest corner of the intersection of Howard Street with Washington Highway. Adjoining Appellants' property on the north is forested property and on the west is a

residential lot. Howard Street is located approximately 100 feet easterly of the intersection of Washington Highway with Randolph Street. The property is located near the crest of a steep hill on Washington Highway.

The property contains a single-family, two-story residential dwelling, oriented on the lot approximately 25 feet from Howard Street and approximately 90 feet from Washington Highway. A 14' x 20' residential garage is attached to the southeast corner of the house, close to Howard Street, and probably having separate access directly from Howard Street.

A 28' x 32' garage (the 'larger garage') built in the summer of 2002 is attached to the westerly end of the house and is accessible directly from Washington Highway, but not from Howard Street, by an approximately 25-foot-wide gravel driveway.

Appellants applied for conditional use approval[2] to use the larger "garage as a repair facility [for] small engines [and] automobiles." Appellants propose to use the garage as home business to operate by appointment (except for approximately ten tow-truck trips a year) and to conduct repairs only during the hours of 8:00 a.m. to 4:30 p.m., Monday through Friday. Appellants propose that Michael Leikert will be the only employee of the business; this will be his full-time job. No more than two vehicles would be worked on at any one time, and no more than three customers' vehicles would be located on the premises at any one time. Appellants propose to add a 3-car screened parking area, and not to allow overnight parking outdoors in that parking area. Appellants also propose to add one exterior business sign, approximately 1' x 6' in size, and do not propose to add any additional exterior lighting. Access for vehicles to the business is proposed to be via the gravel driveway from Washington Highway. The driveway is located near the top of a steep hill along Washington Highway. Vehicles approaching the driveway from the intersection of Washington Highway and Randolph Street have to make a 90 degree turn into the driveway near the crest of the hill. Appellants propose that vehicles will enter and exit the driveway in a forward posture and that vehicles will turn around on the property to avoid either backing into the driveway or onto Washington Highway. The newly-proposed parking area provides an area for passenger vehicles to turn around and exit frontwards. However, large vehicles such as flatbed trucks delivering vehicles to the property must either back into the property or back out of the property, as there is not adequate gravel area on the property for them to turn around, unless Appellants propose to have these large trucks turn around on the grass or propose to add gravel width to any additional part of the driveway or the front yard of the property.

Sight distances for vehicles exiting the driveway are limited to 100 feet to the left (east) and only 35 feet to the right (west). The speed limit on Washington Highway is 25 mph, but traffic is observed driving faster than that limit in that location. Even at the speed limit, the sight distances make the driveway location unsafe, especially for any maneuvers involving large trucks, which could require traffic to be stopped in both directions on Washington Highway during a backing maneuver or making a wide right-angle turn into the driveway. There have been eleven reported and at least two unreported accidents on Washington Highway from 1997 through mid-2003, with one accident occurring near the property at the intersection of Washington Highway and Randolph Street and the rest of the accidents occurring further along Washington Highway.

Washington Highway carries an average flow of approximately 1100 vehicles each weekday, with an average in the morning peak hour of a total[3] of 132 (70 in one direction and 62 in the other) and an average in the afternoon peak hour of a total of 117 (57 in one direction and 60 in the other), or approximately two per minute.

Appellants will allow customers to drop off their vehicles at the garage for repair work, but they will encourage the use of a pick-up and drop-off service. Appellants estimate that two to four vehicles will access the property for repair business purposes on an average day and that flatbed or tow trucks and other similar vehicles will access the property approximately ten times per year when trucks will need to deliver vehicles for repair work. Appellants propose to work on two to four vehicles a day, which would generate twelve to twenty-four additional one-way vehicle trips per day, not including any test driving trips by Appellants to verify the success of a repair, and not including the approximately ten annual trips to the property by tow truck. The number of trips per day is calculated as six per vehicle, as follows, assuming that the client would not wait at the property while the repairs were being performed: (1) the client vehicle coming to the property, (2) the client's being driven into town by Appellants[4] from the property, (3) Appellants' return trip to the property, (4) Appellants' trip to town after the repair to pick up the client, (5) Appellants' return trip to the property with the client, and (6) the client's trip away from the property with the repaired car. Despite these recalculations from the data supplied to the DRB, and even if all these additional trips are done in either the morning peak hour or the afternoon peak hour, the proposed repair business would still only increase the volume of traffic on Washington Highway by a maximum of six to twelve trips in each peak hour (an additional car every five to ten minutes), or a maximum of 24 trips in a day. Appellants propose to properly dispose of waste oil and other similar products off the premises, with no outside storage of any materials associated with the business. Appellants propose that the repair work will be completed inside the garage, although road tests (test drives) may be required in connection in certain jobs. Some noise will occur in connection with the business, due to the running of engines during diagnostics, test drives, and vehicles coming onto and off the property and due to the use of various tools and the compressor. However, the compressor itself is proposed to be located in a sound-insulated room. While Appellants propose that the garage doors would be closed at any time that work is being done on vehicles inside, they did not present evidence to show how this would limit the noise perceived by the nearby neighbors. Also, while Appellants also propose to install a system in the future to vent the exhaust through the roof of the garage, they did not present evidence to show how this would reduce or limit the effect of the exhaust fumes on the nearby neighbors.

The character of the area surrounding Appellants' property is a residential neighborhood with mostly single-family homes and a few home businesses (a daycare and a flower shop); it has a " nice family atmosphere." The neighborhood is generally quiet except for the typical sounds of residential activity such as children playing outside and people working in their gardens and yards. Some of the neighborhood residents are at home during the day, either year round or in the summer months. Neighbors have been disturbed by loud engine noise and by exhaust fumes from time to time when Mr. Leikert has been working on vehicles at the property. The garage doors have been open or partly open during some of those incidents.

Under § 248 of the Zoning Bylaws, a home business is a conditional use in the High Density Residential zoning district. Under § 460, the DRB may approve a home business as a conditional use provided that the proposed business meets the specific home business standards in § 460 as well as the § 630 conditional use standards. (In addition, the proposed business must also meet the requirements of § 500 (site development plan approval); however, in the present case Appellants did not apply for site development plan approval at the time they applied for conditional use approval of the home business and it is therefore not before the Court in this on-the-record appeal.

The DRB concluded that the proposal met all the home business standards of § 462, but that it failed to meet the conditional use standards in the following sections of the Zoning Bylaws: § 632.2 (character of the area affected), § 632.3 (traffic on roads and highways in the vicinity), and § 632.4 (compliance with the bylaws in effect). The DRB therefore denied Appellants' application for conditional use approval.

Appellants argue that it is inconsistent for the DRB to have concluded under the home business standard of § 462.5 that the proposal would not generate traffic in greater volumes than would normally be expected in the neighborhood, and yet to have denied the application on the basis that the proposal would adversely affect traffic on the roads in the vicinity. § 632.3. These two conclusions are not necessarily inconsistent, as the home business standard addresses the <u>volume</u> of additional traffic to be generated by the proposal, while the conditional use standard addresses the <u>effect</u> of those vehicles on traffic already passing by on the roadways.

In the present case, the evidence supports both of the DRB's conclusions regarding traffic. Even with the revised calculations of the number of trips to be expected going in and out of Appellants' driveway, the proposal will not increase the volume of traffic appreciably over the peak hour traffic or the daily traffic already experienced in the neighborhood using Washington Highway. On the other hand, because of the geometry of the crest of the hill on Washington Highway in relation to Appellants' driveway, and the inadequate sight distances, especially to the west, the proposal as designed creates a safety hazard that can be expected to adversely affect traffic passing by on Washington Highway.

Appellants argue that it is inconsistent for the DRB to have concluded under the home business standards of §§ 462.3 and 462.4 that the proposal would not generate objectionable noise or odor, or any exterior displays, exterior storage of materials or exterior indication of the home business "which is at variation from the residential character of the neighborhood," and yet to have denied the application on the basis that the proposal would adversely affect the [residential] character of the area. § 632.2.

In the present case, there was substantial evidence in the record as a whole regarding noise and exhaust fumes to support the DRB's conclusion that the business as proposed would adversely affect the residential character of the area. If anything, it is the DRB's conclusion that the proposal satisfied the home business standard of § 462.4 as to noise and odor that is unsupported by substantial evidence in the record as a whole. However, as only the applicant appealed, and did not raise that issue, we will not reach it in an appeal on the record.

Appellants also question of whether the DRB properly concluded that because the project fails to conform with §§ 632.2 and 632.3, that it therefore also fails to conform with "bylaws in effect with special reference to these zoning regulations" under § 632.4. In general,

the conditional use standard of whether a proposed project will adversely affect bylaws in effect is applied to import all the municipality's bylaws other than the conditional use standards into consideration during conditional use review, simply because it is unnecessary to import the conditional use standards themselves into conditional use review. Thus, the DRB can consider whether a project will meet the Town's performance standards, or health ordinances, in considering conditional use review. Similarly, even if a project has not yet made application for another required permit, such as site plan review, the DRB can consider whether the proposal will meet any other bylaws with which it must comply. The DRB's conclusion that this application failed to meet one of the conditional use standards (§ 632.4) because it failed to meet two other conditional use standards (§§ 632.2 and 632.3) may be superfluous, but it is not technically incorrect. It can have no additional effect on the denial of conditional use approval beyond the failure of the proposal to meet the other two conditional use standards.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the DRB's decision denying Appellants' application for conditional use approval to operate an automobile and small engine repair business in the large garage at their residence is AFFIRMED, as it is supported by substantial evidence on the record as a whole.

We note that this decision does not address whether an application could be approved using access only from Howard Street, or using access that entered from one street and exited on another, or with no after-hours towing to the property, or using only a drop-off service elsewhere in town to minimize client trips to the property, or proposing additional noise or odor mitigation measures. However, any such modified application would have to be the subject of a new proceeding before the DRB. This decision also does not address whether the property would qualify for site development plan approval, or whether, if approved, any additional conditions would be appropriate under the site plan standards.

Done at Barre, Vermont, this 3rd day of May, 2004.


_____

Merideth Wright
Environmental Judge




**Footnotes**

1.    Richard and Josee Tomlinson are not listed on the brief filed by Attorney Lively on behalf of the Interested Persons in this case, but were listed on his Notice of Appearance. Please advise the Court for our records if they have withdrawn as parties or are no longer represented by Attorney Lively.

2.    On the application form, under "nature of request," the space for 'conditional use approval was checked and the space for 'site plan review' was left blank.

3.    We note that the peak hour volumes are taken directly from the data in the Washington Highway Traffic Count in evidence, as the cover letter for that traffic count misreads the data from its attached table for the number of vehicles during the morning and afternoon peak hours (7:00 to 8:00 a.m. and 4:00 to 5:00 p.m., respectively).

4.    The calculation of the number of trips per client vehicle comes out the same if a client is driven from and returned to the property by a third party rather than by Appellants, as that third-party's car would not otherwise be coming to the property.